IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER (BRUCE) THE LIVING MAN and ELIZABETH (BRUCE) THE LIVING WOMAN,<br><br>　　　Plaintiffs,<br><br>v.<br><br>WILLIAM A. PRICE; WILLIAM KELLY; CAROL EGLY; JEANNE VAUDT; ROBERT J. BLINK; ANASTASIA HURN; EMILY NIEMAN; STEPHANIE RHINEHART; KATIE GOSCH; LINDA LANE; JOHN P. SARCONE; JESSE RAMIREZ; KEVIN BELL; STEPHANIE BROWN; KEVIN J. BROWNELL; GRANT DUGDALE; KATHERINE MILLER-TODD; JAKE LANCASTER; ALYSSA WILSON; GARY BELLINGHAUSEN; JEANNE MUNSON; KYLE THIES; NEWBURY LIVING; NANCY ELSCOTT; THE DES MOINES REGISTER; DARREN TROMBLAY; JEFFREY PITTS; DALE MAYS; PAUL WHITE; LUCAS TAYLOR; ASHLEY CRONBAUGH; and ANTHONY REED,<br><br>　　　Defendants. | No. 4:18-cv-00223-RGE-CFB<br><br><br><br>**INITIAL REVIEW ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND DISMISSING CASE** |

## I.　INTRODUCTION

Plaintiffs Christopher Bruce and Elizabeth Bruce bring this pro se complaint,[1] alleging

various violations of constitutional rights under 42 U.S.C. §1983, 18 U.S.C. §1961

---

[1] The original complaint, filed July 9, 2018, was unsigned by either plaintiff. Compl., ECF No. 1. After being informed of the error, Plaintiffs replaced the deficient complaint with a signed complaint. Errata, ECF No. 5. On August 7, 2018, Plaintiffs filed an amended complaint. Am. Compl., ECF No. 7. The amended complaint is unsigned. *Id.* at 62. The Clerk of Court previously gave Plaintiffs notice of such deficiencies in Plaintiffs' filings. *See* Letter, ECF No. 4. The Court will not consider this amendment, and for ease of reference, will refer to the original signed complaint, ECF No. 5.

(Civil Racketeer Influenced and Corrupt Organizations Act), and various criminal statutes. Compl. 3, ECF No. 5. Plaintiffs also seek leave to proceed in forma pauperis. Christopher Bruce's Mot. Proceed In Forma Pauperis, ECF No. 2; Elizabeth Bruce's Mot. Proceed In Forma Pauperis, ECF No. 3.

## II.    SUMMARY OF RELEVANT FACTS

On July 17, 2014, Defendant Emily Nieman, an employee of the Iowa Department of Human Services, went to Plaintiffs' residence to check on the welfare of Elizabeth Bruce's newborn daughter, T.B. ECF No. 5 ¶ 1.

On July 18, 2014, Nieman returned to take T.B. to the hospital for evaluation. *Id.* ¶ 2. On July 21, 2014, Nieman arranged to remove T.B. from the custody of Christopher Bruce and Elizabeth Bruce. *Id.* ¶ 9. Plaintiffs allege Nieman accomplished this by falsifying documents, forgery, perjury, slander, and libel against Plaintiffs. *Id.* They contend Nieman "forged legal documents, colluded and conspired against the rights of the plaintiffs, and engaged in RICO activity, in that she conspired with others of The Department of Human Services . . . and the courts and all of the attorneys involved up to this point, in order to defraud the United States Government for incentive monies" by terminating the parental rights of the Plaintiffs. *Id.* ¶ 12.

During the removal process, Defendant Judge William Price appointed Defendant Dale Mays as counsel for Elizabeth Bruce. *Id.* ¶ 13. Defendant Paul White was appointed to be guardian ad litem for T.B. *Id.* Defendant Katie Gosch was assigned as a caseworker to Plaintiffs. *Id.* Defendant Ashley Cronbaugh[2] was the visit supervisor. *Id.*

A Child in Need of Assistance petition was filed July 22, 2014, by Defendant Assistant Polk County Attorney Stephanie Brown. *Id.* ¶ 17. Plaintiffs allege there were irregularities in the

---

[2] Plaintiffs occasionally refer to Cronbaugh as Ashley Andrew or Ashley Andrews. The Court will refer to her by her current surname.

petition. *Id.* A removal hearing was held on July 29, 2014, presided over by Judge Price. *Id.* ¶ 14. Plaintiffs allege "that the court, DHS, the county attorney's office AND our own lawyers were working in concert against us." *Id.* ¶ 15.

Plaintiffs allege Brown "conspired" with Nieman and Judge Price "to file a false unsubstantiated CINA petition against the claimants, and belittled and oppressed the claimants on the stand, to make them look like bad people and bad parents." *Id.* ¶ 19. Plaintiffs assert Brown also "conspired with Attorney Dale Mays to force him to be silent in representing [Elizabeth Bruce] during this questioning." *Id.* Plaintiffs allege Brown falsified legal documents during the proceedings and "conspired with others of DHS and the courts, all of the attorneys involved up to this point" to commit fraud. *Id.* Plaintiffs also allege Brown is guilty of kidnapping. *Id.*

On September 5, 2014, Mays required Elizabeth Bruce to complete and submit an updated financial affidavit. *Id.* ¶ 21. Plaintiffs state this was a way to make them have to pay for documents filed in the case. *Id.*

A termination of parental rights hearing was held on September 12, 2014. *Id.* ¶ 22.

Two days after the adjudication, Christopher Bruce posted an article on his online blog about the hearing. *Id.* ¶ 25. He states he was then "locked out and denied access to any document filed by the prosecution in the case, due to [Christopher Bruce] allegedly being 'a security risk.'" *Id.* Full access to the docket was restored two months later. *Id.*

Plaintiffs allege Cronbaugh lied at the hearing against them. *Id.* ¶ 26. On September 12, 2014, Christopher Bruce contacted Cronbaugh by text and demanded she remove herself as the visit supervisor. *Id.* Christopher Bruce was told not to contact Cronbaugh by text or phone. *Id.* On September 24, 2014, Defendant Stephanie Rhinehart informed Christopher Bruce in a telephone message he would not be allowed to visit T.B. unless he stopped writing about the termination proceedings in his blog. *Id.* ¶ 27. Christopher Bruce did not agree and "told Defendant Rhinehart

that she could go to Hell." *Id.* On September 30, 2014, a detective from the Des Moines Police Department called Christopher Bruce to investigate possible harassment charges based on these events. *Id.* ¶ 28. No charges were filed.

Plaintiffs allege the parental termination proceedings were fraught with error and based on false information. *Id.* ¶¶ 29–56. Specifically, Plaintiffs allege Defendant Anthony Reed conducted fraudulent drug tests for the Department of Human Services. *Id.* ¶¶ 35–39; 43–44. Plaintiffs allege Judge Price and Defendant Katherine Beth Walker,[3] the attorney who represented T.B.'s biological father, "agreed to work together" to keep Christopher Bruce from having standing in the case. *Id.* ¶ 50.

On February 20, 2015, Defendants Rhinehart, Gosch, and Nieman reported Christopher Bruce to the Des Moines Police Department, and Defendant Officer Jake Lancaster investigated the report. *Id.* ¶ 57. Plaintiffs allege Lancaster called Christopher Bruce "incessantly," and eventually obtained a warrant against Christopher Bruce for harassment. *Id.* Based on Lancaster's investigation, a misdemeanor charge of First Degree Harassment was filed against Christopher Bruce. *Id.* ¶ 63; *see also State v. Bruce*, AGCR 283733 (Iowa Dist. Ct. Polk Cty. Feb. 20, 2015).[4] These charges were prosecuted by Defendant Assistant Polk County Attorney Kevin Bell. ECF No. 5 ¶ 58. The state dismissed this harassment charge after Christopher Bruce pleaded guilty to third degree harassment charges in a related matter. Dismissal, *Bruce*, AGCR 283733 (April 15, 2015).

---

[3] Plaintiffs do not name Katherine Beth Walker in the caption of the complaint but do refer to her as a defendant in the body of the complaint. *See* ECF No. 5 ¶¶ 45, 50, 53, 54–56, 60(h).
[4] The Court takes judicial notice of the public records related to Christopher Bruce's state court cases. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (addressing federal court's ability to take judicial notice of public records).

On February 28, 2015, Plaintiffs' parental rights were terminated. ECF No. 5 ¶ 59. Plaintiffs allege the Department of Human Services never intended to reunite T.B. with them, but that "ALL, that had been involved thus far, and even [T.B.'s biological father's] attorney, conspired with Price, the DHS, and all at the county attorney's offices (including and ESPECIALLY [Defendant] assistant County Attorney Kevin J. Brownell) . . . to make sure T.B. went somewhere, ANYWHERE . . . and to ANYONE, as long as no one gave her back to" Plaintiffs. *Id.* ¶ 60 (punctuation in original).

Plaintiffs allege the Polk County Attorney's Office, the Department of Human Services, Brownell, Mays, Rhinehart, Gosch, Walker, Judge Price, Lancaster, Bell, Nieman, White, Reed, Brown, and Cronbaugh conspired together to deprive Plaintiffs of their parental rights, and were engaged in racketeering activities for the purpose of "stealing children from parents without merit and pawning them off to select foster families for the later purposes of adopting them." *Id.* ¶ 60.

Plaintiffs appealed the parental termination decision, and a hearing on this matter was held July 5–6, 2015. *Id.* ¶ 65. Defendant Assistant Iowa Attorney General Grant Dugdale represented Nieman. *Id.* Plaintiffs allege Reed gave false testimony at the hearing, and claimed not to know any of the Department of Human Services employees. *Id.* ¶ 66. Plaintiffs allege Reed, Gosch, Judge Price, and Brownell "conspired together and planned this 'random event' well ahead of time." *Id.* Plaintiffs allege Dugdale conspired with Nieman "to further libel and slander" Plaintiff's names in an administrative hearing. *Id.* ¶ 70(a). Further, Plaintiffs assert Defendant Assistant Attorney General Katherine Miller-Todd "conspired with the defending parties afore-mentioned, and the appellate judges involved in the appeal to the claimants' termination of parental rights." *Id.* ¶ 70(b). Plaintiffs assert that given all of these facts, "it should not be difficult for this court to find that a most definitive meeting of the minds and conspiracy occurred between all that have been mentioned thus far in this Claim, as defendants." *Id.* ¶ 71.

Plaintiffs allege the transcript of the termination hearing is "a complete fabrication and designed by the named defendants after they did conspire to wrongfully and unlawfully claim to attend and decide the unwarranted fate of the claimants and their 'neglected' daughter." *Id.* at ¶67. Plaintiffs assert White, T.B.'s guardian ad litem, never spoke at the hearing but three pages of the transcript reflect his testimony. *Id.* Plaintiffs also contend Defendants "had nearly a full 9 months with which to totally invent, alter or fabricate these transcripts to say just about anything had been said, or had occurred; before it would be required to be sent to the appellate court of Iowa." *Id.* Plaintiffs appealed the decision of the district court to the Iowa Court of Appeals. *Id.* at ¶ 68. Plaintiffs allege unfairness and irregularities in the appellate proceedings. *Id.* Plaintiffs allege the appellate court "conspired with the aforementioned defendants named up to this point, for the best and most efficient means to further cover up these defendant's mishandling of the entire case on appeal." *Id.* The Iowa Court of Appeals held Christopher Bruce had no parental rights with respect to T.B. *In re T.B.*, No. 15-0559, 2016 WL 3269581, at *1 (Iowa Ct. App. June 15, 2016). The Iowa Court of Appeals also affirmed the termination of Elizabeth Bruce's parental rights. *Id.* at *6.

While Plaintiffs waited for the Court of Appeals to decide the appeal, Christopher Bruce "continuously" sent "emails containing relevant news and clippings, recordings of legal atrocities, paperwork and proof of what was happening to the claimants' family, as well as things that were happening to other families all over Iowa, to [Defendant] Darren Tromblay, the then Editor-in-Chief at CityView magazine in Des Moines, Iowa." *Id.* ¶ 72. Initially, Tromblay responded to Christopher Bruce about the possibility of a story but stated he needed to do more investigation. *Id.* Tromblay emailed Christopher Bruce of his intention to send reporter Defendant Jeffrey Pitts to investigate the story. *Id.* After not hearing anything more from Tromblay, Christopher Bruce emailed Tromblay again asking "somewhat angrily, what the big delay was" and why he had not

heard from him. *Id.* Based on these events, Christopher Bruce was charged with third degree harassment of Tromblay. *State v. Bruce*, SMAC 359086 (Iowa Dist. Ct. Polk Cty. Jan. 13, 2016).

On January 23, 2016, officers from the Carroll Police Department, including Defendant Officer Gary Bellinghausen, went to arrest Christopher Bruce on the Tromblay harassment charges. *Id.* ¶¶ 72–73. Notices at the Bruce home stated law enforcement officers were required to produce official identification and state their purpose. *Id.* ¶ 74. The notices stated if a law enforcement officer did not provide this information, "they would be agreeing to enter into contract with the claimants; and in so doing, would also agree to pay the same a land use fee at the agreed upon rate of $10,000 per person, per day, or any portion of that day." *Id.*

The officers did not have a warrant at the time they approached the house, *id.* ¶ 73, but returned twenty minutes later with a warrant. *Id.* ¶ 75. The officers arrested Christopher Bruce on the warrant for harassment of Tromblay and transported him to the Polk County Jail. *Id.* Plaintiffs allege the warrant to arrest him was not valid. *Id.* ¶ 77.

Prior to the January 23rd arrest, Christopher Bruce noticed his emails to Defendant Polk County Attorney John P. Sarcone were opened by others in different cities. *Id.* ¶ 79. Plaintiffs allege Sarcone was deliberately forwarding the emails to other law enforcement agencies "in an attempt to have [Christopher Bruce] investigated or federally arrested, for no crime that [Christopher Bruce] had committed; save exposing Mr. Sarcone's illegal activities." *Id.*

Christopher Bruce continued to post stories on his blog regarding his views of the Department of Human Services in Iowa and around the country. *Id.* ¶¶ 80–81. He sent an email to 8000 social workers who worked in Los Angeles County, California, "to let them know that their crimes against Theodore Booker were online for the world to see." *Id.* ¶ 80. Plaintiffs describe Booker as "a fellow warrior against child trafficking." *Id.*

Christopher Bruce was released and arrested again on January 25, 2016. *Id.* ¶ 77. The new charges were based on alleged harassment of Defendant Jeanne Munson of Altoona, Iowa, by Christopher Bruce. *Id.* ¶ 82; *see also State v. Bruce*, AGCR292141 (Iowa Dist. Ct. Polk Cty. Jan. 19, 2016). Plaintiffs allege the arrest "most certainly occurred for no other reason than what had happened with the DCFS offices in Los Angeles; as well as what had already occurred in C.B.'s newly formed war with his local DHS office in Carroll, Iowa." ECF No. 5 ¶ 82. Plaintiffs allege Munson's grandchildren had been removed from her care, and Munson had become the administrator for a group protesting the actions of the Department of Human Services in Iowa. *Id.* Plaintiffs allege Department of Human Services Director Charles Palmer had "made a deal" with Munson, "offering her and others to once again be allowed to visit with their children and grandchildren" in exchange for Munson and others turning against Christopher Bruce. *Id.*

As Christopher Bruce was being transported to the Polk County Jail, Defendant Officer Alyssa Wilson, with the Altoona Police Department, filed two additional police reports. *Id.* ¶ 83. These reports, allegedly filed at the behest of Sarcone, resulted in additional charges against him for stalking and for threats. *Id.*; *see State v. Bruce*, FECR292312 (Iowa Dist. Ct. Polk Cty. Jan. 26, 2016). As a result, Christopher Bruce's bond increased from $200 to $70,000, which Plaintiffs allege was excessive. ECF No. 5 ¶ 83.

Plaintiffs allege the charges were filed when it was clear "something more drastic had to be done by the County Attorney's offices (namely, John P. Sarcone) to insure [Christopher Bruce] didn't bond out easily this time." *Id.* ¶ 84. Plaintiffs allege the unreasonable bail was imposed by Sarcone and Defendant Assistant Polk County Attorney Linda Lane, and enforced by Defendant Judge Carol Egly. *Id.*

On January 27, 2016, Judge Egly presided over the initial appearance of Christopher Bruce, appearing on the charges of harassment of Tromblay. *Id.* at ¶¶ 85–86. Plaintiffs allege Judge Egly

had no jurisdiction over Christopher Bruce. *Id.* ¶ 85. Plaintiffs allege Judge Egly, "in collusion with Ms. Lane and Defendant [Judge Anastasia] Hurn and the Polk County Clerk's office; did change the record of the court and substituted [Christopher Bruce]'s motion for their own and showed it to state that it was [Christopher Bruce]'s wish for a non-jury trial, in order to deny the claimant his right to a trial by a jury of his peers." *Id.* ¶ 86; *see also* Order Setting Nonjury Trial, *Bruce*, SMAC359086 (Feb. 9, 2016).

The Tromblay charges were tried as a nonjury case on March 3, 2016, before Judge Hurn. ECF No. 5 at ¶¶ 86, 88. Judge Hurn found Christopher Bruce guilty of harassing Tromblay and Pitts. *Id.* Plaintiffs allege this conviction was based on false information. *Id.* ¶ 89. Plaintiffs allege "Tromblay called and conspired with John Sarcone and his offices to set [Christopher Bruce] up to be arrested for harassing defendant Tromblay and would also cause a 5 year no contact order to be issued; to ensure he never heard from [Christopher Bruce] again." *Id.* ¶ 90.

Plaintiffs explain:

A meeting of the minds occurred here, in that Tromblay, Pitts and Sarcone brought on a situation that would cause the claimant to, first, get angry; by promising him what he desired most, a story done on him; and then leaving him out to dry; and then, since he would of course express that anger at being crossed, Sarcone could then file his charges.

*Id.* ¶ 90.

Meanwhile, the charges against Christopher Bruce based on his harassment of Munson were consolidated with the charges against him for stalking and threats to Munson. *See* Trial Information, *Bruce*, FECR292312 (Feb. 4, 2016). A hearing was held February 29, 2016, after which Defendant Judge William Kelly denied Christopher Bruce's request to represent himself. Order, *id.*, (Feb. 29, 2016).

Trial began April 11, 2016, and was presided over by Defendant Judge Robert J. Blink. ECF No. 5 ¶¶ 95–96. Defendant Lucas Taylor represented Christopher Bruce in the capacity of

stand-by counsel in the criminal proceedings. *Id.* ¶ 93. Plaintiffs allege Taylor's representation was deficient. *Id.* A jury convicted Christopher Bruce of stalking and harassment, and the court sentenced Christopher Bruce to concurrent sentences of 181 days in jail, with credit of 52 days on each. Sentencing Order, *Bruce*, FECR292312 (May 4, 2016).

Plaintiffs allege the convictions were tainted by a libelous story in the Defendant Des Moines Register that affected the jury verdict. *Id.* ¶ 96. Plaintiffs also allege that during his jail stay, Christopher Bruce was denied the ability to speak freely with his wife or counsel. *Id.* ¶ 98.

Plaintiffs allege they have "shown, without a doubt, that a meeting of the minds occurred between the report filer (Darren Tromblay), the county attorney's office (Assistant Polk County attorney Linda Lane, . . . from January until December of 2016, using quite a variety of simple and aggravated misdemeanors and felony charges, over eight in all in one year period), Defendant Price, Defendant William Kelly, Defendant Egly, Defendant Hurn, to conspire against, withhold and deny the plaintiff each and every civil and due process right available, in just what has been stated so far." ECF No. 5 ¶ 91.

After Christopher Bruce was released from custody, he went to the Polk County Courthouse to register for probation. *Id.* ¶ 102. When he learned he had to pay $300 and would have to be in Ames, Iowa, he asked for reconsideration of the terms of his probation. *Id.* On July 24, 2016, the Ames Probation Office filed a notice that Christopher Bruce had not appeared at the assigned appointment, and was in violation of his probation. *Id.* ¶ 103. Judge Blink issued a warrant for Christopher Bruce's arrest on July 25, 2016. *Id.*

Sometime prior to August 16, 2016, Christopher Bruce and his dog stayed with a friend at the Defendant Newbury Living Inc. building. *Id.* ¶ 106. Defendant Nancy Elscott resided in the building. *Id.* Plaintiffs allege Elscott prompted the Newbury Living management to evict Christopher Bruce based on previous personal interactions with Christopher Bruce. *Id.* Christopher

Bruce vacated the premises on August 16, 2016, but stayed outside of the building on a blanket with his dog in protest. *Id.* He began sitting there at 6 a.m. that day. *Id.* ¶ 107.

At about 11:30 a.m., Defendant Des Moines Police Officer Kyle Thies appeared on the scene on his bicycle. *Id.* ¶ 110. Thies instructed Christopher Bruce to move away from the building. *Id.* Christopher Bruce argued and demanded to know the basis of why he could not stay. *Id.* Theis then radioed for the Animal Rescue League to come and secure Christopher Bruce's dog. *Id.* Christopher Bruce became angry and made his own 911 call "to report the unlawful actions of Mr. Thies." *Id.* Plaintiffs assert Thies had no legal basis for telling him to move. *Id.* Because Christopher Bruce did not want to lose his dog, he picked up his belongings and walked away. *Id.* The staff at Newbury Living and Elscott watched him leave, and Christopher Bruce "flipped them all off and stated that he would be back." *Id.*

On his bicycle, Thies approached and arrested Christopher Bruce. *Id.* ¶ 111. Christopher Bruce refused to identify himself to Thies. *Id.* ¶ 112. Thies eventually found a legal document with Christopher Bruce's name on it. *Id.* After submitting the name to the dispatcher, Thies learned of the warrant for the probation violation. *Id.* As they were waiting for a police van to arrive, Elizabeth Bruce walked towards them, and Christopher Bruce shouted to her to take the dog. *Id.* Plaintiffs allege Thies told Elizabeth Bruce she would be arrested if she picked up the dog. *Id.*

Based on these events, a criminal complaint was filed against Christopher Bruce on August 17, 2016, for disorderly conduct, harassment of public officers and employees, and for making a false 911 report. *State v. Bruce*, SMAC363417 (Iowa Dist. Ct. Polk Cty. Aug. 17, 2016). Christopher Bruce appeared before Judge Price, who set cash bail of $1500 per charge on the three misdemeanor charges. Initial Appearance, *id.* (Aug. 17, 2106). Assistant County Attorney Lane offered to drop all charges, but Christopher Bruce wanted to proceed to a jury trial "because he

felt that the arrest and the charges that resulted were ridiculous and unlawful, and asked for a jury trial." ECF No. 5 ¶ 113.

A jury found Christopher Bruce guilty of disorderly conduct and filing a false 911 report. Sentencing Order, *Bruce*, SMAC363417 (Sept. 29, 2016). Judge Robert Hanson sentenced Christopher Bruce to 30 days in the Polk County Jail; Christopher Bruce was given credit for 30 days already served. *Id.*

Christopher Bruce filed a postconviction relief application, although it is unclear which conviction he challenged. ECF No. 5 ¶ 115. Defendant Assistant Polk County Attorney Jesse Ramirez represented the state, and Defendant Judge Jeanie Vaudt[5] presided over the action. *Id.* ¶ 119. Plaintiffs allege the postconviction relief proceedings were biased. *Id.* at ¶¶ 119–123. Judge Vaudt denied the application for postconviction relief on October 7, 2017. *Id.* ¶ 124. Christopher Bruce did not appeal. *Id.* ¶ 125.

Plaintiffs ask the Court for (1) restoration of Elizabeth Bruce's parental rights and return of T.B. to her custody; (2) punitive damages for mental anguish, malicious prosecution, libel, slander, false imprisonment, fraud, pain and suffering, and defamation; (3) Christopher Bruce's criminal records to be expunged; (4) a finding that Bellinghausen is in breach of contract; (5) injunctive relief to keep Sarcone and his office from terrorizing Plaintiffs; and (6) charges against Sarcone for civil racketeering in his "concerted effort to kidnap children from poor parents, who do not obviously know the 'law' and do not generally have the knowledge or the wherewithal to fight against them or afford a real attorney." *Id.* at 61–62.

---

[5] The Court takes judicial notice of the correct spelling of Judge Jeanie Vaudt's name. *See Stutzka*, 420 F.3d at 760 n.2 (addressing federal court's ability to take judicial notice of public records).

## III.  LEGAL STANDARD

Under 28 U.S.C. § 1915, when a party is proceeding in forma pauperis, "the court shall dismiss the case at any time" if the court determines the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A pro se complaint in a proceeding without prepayment of fees must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The Court must weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *See Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (determination of what is "clearly baseless" is left to discretion of court ruling on in forma pauperis petition). While Federal Rule of Civil Procedure 8(a)(2) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678–79 (citations omitted).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988)

(citations omitted). A complaint states a plausible claim for relief when its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted).

## IV.    Discussion

### A.    Immunity

#### 1.    Judicial Officers

Judges Price, Kelly, Egly, Vaudt, and Blink and Magistrate Hurn are named as defendants in this action. Judges receive immunity from suit for all judicial acts except for actions outside his or her judicial capacity and for actions "taken in the complete absence of all jurisdiction." *Schottel v. Young*, 687 F.3d 370, 373–74 (8th Cir. 2012). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Id.* at 373 (quoting *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982)).

All of the allegations against these defendants involve actions made by the judge in his or her judicial capacity, either as part of the parental termination proceedings or the criminal proceedings against Christopher Bruce. Because judges receive immunity from suit for all judicial acts, all of the named judicial officers are dismissed from this action. *See Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (absolute immunity defeats a suit at outset).

#### 2.    Polk County Attorney's Office

Lane, Sarcone, Ramirez, Bell, Brown, and Brownell are attorneys with the Polk County Attorney's Office. Absolute immunity from damages is given to prosecutors when the alleged conduct arose from official duties in initiating or presenting criminal prosecutions. *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976); *see also Woodworth v. Hulshof*, 891 F.3d 1083, 1089 (8th Cir. 2018). The immunity does not extend to functions outside the role

of advocate, but does apply to "actions taken to initiate a prosecution, 'even if those actions are patently improper.'" *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013) (quoting *Williams v. Hartje*, 827 F.2d 1203, 1208 (8th Cir. 1987)).

All allegations against these defendants pertain to actions taken within the scope of prosecution of Christopher Bruce in criminal cases or his postconviction relief proceeding. Thus, these defendants are immune from suit for damages.

Moreover, the doctrine of collateral estoppel bars Plaintiffs from relitigating the claims against Polk County Attorney John Sarcone.[6] Plaintiffs are precluded from relitigating the same issues when

> (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action.

*Irving v. Dormire*, 586 F.3d 645, 648 (8th Cir. 2009) (citations omitted).

The issues raised here are identical to the issues already addressed and decided in *Bruce v. Polk County Attorney's Office*, 4:18-cv-00040-RGE-CFB (S.D.Iowa) (dismissed September 21, 2018) ("*Bruce I*"). Plaintiffs and Sarcone were both parties in the previous action, and the allegations against Sarcone in that action are identical to the ones raised here. The Court made its final adjudication on the merits in that case after Plaintiffs resisted and fully litigated the

---

[6] Collateral estoppel is an affirmative defense. *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) ("Claim preclusion, like issue preclusion, is an affirmative defense."). The complaint may be dismissed if, on the face of the complaint, relief is barred based on an affirmative defense. *Cf. Jones v. Bock*, 549 U.S. 199, 215 (2007) ("[i]f the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim," even though statute of limitations is an affirmative defense); *see also Housley v. Erwin*, 325 F. App'x 474, 475–76 (8th Cir. 2009) (per curiam) (unpublished) (approving pre-service dismissal of claims based on statute of limitations).

motion to dismiss by Sarcone. *See* Order 33, *Bruce I*, ECF No. 81. Thus, the claims against Sarcone are barred by the doctrine of collateral estoppel.

### 3. Public Defenders/Guardian Ad Litem

Taylor was appointed as stand-by counsel in Christopher Bruce's criminal proceedings. ECF No. 5 ¶ 93. Mays was appointed to represent Elizabeth Bruce in the parental termination hearing. *Id.* ¶ 13. Walker represented the biological father of T.B. in the parental termination hearings. *Id.* ¶ 45.

A public defender is not acting under color of state law when representing a criminal defendant. *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). Similar to public defenders, attorneys representing parents in termination proceeding are also not acting under color of state law. *See Bell v. Jackson*, No. C10–0376–MJP, 2011 WL 6968322, at *5 (W.D. Wash. Nov. 1, 2011) (citing *Dodson*, 454 U.S. at 325) (holding appointed defense counsel in dependency hearing not state actor because "public defenders acting in their role as advocates are not considered state actors for purposes of bringing suit under § 1983"). As these defendants were not acting under color of state law, they cannot be held liable under §1983.

Moreover, Plaintiffs are raising the same issues against Mays and Taylor that were presented and decided in *Bruce I* where Plaintiffs and these defendants were both parties. Order 21–22, *Bruce I*, ECF No. 81. The doctrine of collateral estoppel bars Plaintiffs from relitigating those issues here. *Irving*, 586 F.3d at 648.

Defendant White was assigned as T.B.'s guardian ad litem. ECF No. 5 ¶ 13. Although White was not a public defender, the same reasoning for public defenders holds true for court-appointed guardians ad litem, that is, "[a] private attorney who is sued for actions allegedly taken as court-appointed counsel [for minor child] does not act under color of state law." *Malachowski v. City of Keene*, 787 F.2d 704, 710 (1st Cir. 1986) (citations omitted);

*see also Sophapmysay v. City of Sergeant Bluff*, 218 F. Supp. 2d 1027, 1043 n.6 (N.D. Iowa 2002) (citing *Dodson*, 454 U.S. at 324) (court appointed guardian ad litem/attorney for deceased child's estate performed traditional lawyer functions before juvenile court and did not act under color of state law). White is therefore immune from suit for damages.

### 4.     Grant Dugdale and Katherine Miller-Todd

Plaintiffs' allegations against the two Assistant Iowa Attorney Generals, Dugdale and Miller-Todd, are merely descriptions of their duties. Plaintiffs state Miller-Todd prepared documents in the termination hearing and the appeal that followed. ECF No. 5 ¶ 63. Dugdale is described as defending one of the social workers in an administrative hearing. *Id.* ¶ 65. Both attorneys were acting in their role of advocate. Initiating termination of parental rights proceedings are within the protected function of prosecution. *Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987) (citing *Martin v. Aubuchon*, 623 F.2d 1282, 1285 (8th Cir. 1980)), *abrogated on other grounds by Burns v. Reed*, 500 U.S. 478 (1991). Because the claims against Dugdale and Miller-Todd arise out of their official duties in initiating and pursing prosecutions, they are both absolutely immune from suit for damages. *See Saterdalen*, 725 F.3d at 842.

### B.     Department of Human Services Employees

Plaintiffs allege Gosch and Rhinehart conspired with the Iowa District Court, Brownell, Brown, Cronbaugh, Mays, and Reed "to kidnap" T.B. and to terminate Plaintiffs' parental rights. ECF No. 5 ¶ 60(c), (f). Plaintiffs also allege Gosch and Rhinehart conspired with Lancaster, Nieman, Cronbaugh, Brownell, White, Judge Price and Bell, to file false charges against Christopher Bruce so he would not be at the termination proceedings. *Id.* Plaintiffs further allege Gosch and Rhinehart libeled and slandered them in the termination hearing, and Rhinehart also violated Christopher Bruce's right to free speech by threatening to stop visitation with T.B. if Christopher Bruce did not stop speaking freely. *Id.* ¶ 60(f). Finally, Plaintiffs allege Gosch engaged

in civil racketeering activities "meant for no other purpose but to illicit funding falsely from the U.S. Government by and through the acts of stealing children from parents without merit, and pawning them off to select foster families for the later purposes of adopting them." *Id.* ¶ 60(c), (f).

Plaintiffs allege Nieman was part of these conspiracies but also unlawfully removed T.B. from Elizabeth Bruce, including kidnapping, and deprived Elizabeth Bruce of her parental rights, falsified legal documents, forged Judge Price's signature, and libeled and slandered Plaintiffs in her testimony and reports to the court regarding Plaintiffs' parenting abilities. *Id.* ¶ 9.

### 1. Section 1983 Claims

While 42 U.S.C. § 1983 does not have an explicit statute of limitations, the Supreme Court has held "that the state statute of limitations for personal injury torts was the appropriate period of limitations of all § 1983 cases." *DeVries v. Driesen*, 766 F.3d 922, 923 (8th Cir. 2014) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)). The Iowa Code provides a limitation period of two years for personal injury claims. Iowa Code § 614.1(2). Iowa's two-year personal injury statute of limitations applies to a § 1983 action. *Wycoff v. Menke*, 773 F.2d 983, 984–85 (8th Cir. 1985).

Plaintiffs filed their original complaint on July 9, 2018. ECF No. 1. Therefore, any § 1983 claims arising more than two years prior to July 9, 2018, or July 9, 2016, are barred by the statute of limitations. This includes § 1983 claims based on infringement of speech, due process, or conspiracy. None of the allegations against these defendants occurred after July 9, 2016. Therefore, all of these claims are barred by the statute of limitations.

Insofar as Plaintiffs allege the violations continue for as long as they have no parental rights over T.B., the claim also fails. *See* ECF No. 5 at 3 ("the violation of these rights by all the defendants run the course of 8 cases and 4 years"). In general, "a limitations period begins to run after a claim accrues, not after an inevitable consequence of that claim." *Green v. Brennan*, 136 S. Ct. 1769, 1780 (2016) (discussing limitations period in context of employment

discrimination); *see also Crawford v. Wash. Cty. Children & Youth Servs.*, 353 F. App'x 726, 729 (3d Cir. 2009) ("The 2007 complaint is an effect of the earlier obtained order terminating parental rights; however, a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." (citation and quotation marks omitted)).

Plaintiffs also ask to be excused from this rule because Christopher Bruce spent one year in jail related to these events and because it took so long for state courts to rule in the parental termination case. ECF No. 5 at 3. Equitable tolling is available when circumstances beyond the control of a plaintiff cause a plaintiff to miss a filing deadline. *Hallgren v. U.S. Dep't of Energy*, 331 F.3d 588, 590 (8th Cir. 2003) (considering general principles of tolling in context of employment discrimination). Examples of equitable tolling include "when a claimant has received inadequate notice, when a motion for appointment of counsel was pending, when the court has led the plaintiff to believe that he had done everything required of him, or when affirmative misconduct on the part of the defendant has lulled the plaintiff into inaction." *Id.* None of those circumstances are present in this case, and no circumstance beyond Plaintiffs' control existed to prevent them from filing a timely lawsuit. Equitable tolling is not appropriate here.

Therefore, the § 1983 claims against these defendants arising prior to July 9, 2016, are barred by the statute of limitations.

### 2. Racketeer Influenced and Corrupt Organizations Act

Throughout the complaint, Plaintiffs allege these defendants conspired together amongst themselves and with others in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961.[7] *See generally,* ECF No. 5. In cases alleging fraud, a plaintiff is subject to

---

[7] Unlike § 1983, "[c]ivil RICO actions are governed by a four-year statute of limitations." *Ass'n of Commonwealth Claimants v. Moylan*, 71 F.3d 1398, 1402 (8th Cir. 1995) (citing *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987)).

the heightened pleading standards. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."), *see also H & Q Props. v. Doll*, 793 F.3d 852, 856 (8th Cir. 2015) (recognizing heightened pleading standard of Rule 9(b) applies to RICO actions).

RICO was enacted as a means to combat organized crime in the United States. *United States v. Turkette*, 452 U.S. 576, 589 (1981). RICO states, in relevant part:

> (c)    It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d)    It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c)–(d). To bring a claim under section 1962(c), Plaintiffs must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Section 1962(d) also creates a claim for conspiracy to violate the substantive RICO prohibitions.

To prove "racketeering activity," a plaintiff must prove a defendant committed a predicate offense enumerated in 18 U.S.C. § 1961(1). Amongst the list of racketeering activities are "predicate acts, including certain state law crimes, conduct that is indictable under various federal provisions, and numerous other offenses." *Gallagher v. Magner*, 619 F.3d 823, 841 (8th Cir. 2010). The predicate offenses include mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) among others. 18 U.S.C. § 1961(1).

To prove a "pattern of racketeering activity" a plaintiff must prove "at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The party also must show:

(1) "the racketeering predicates are related" and (2) these predicates either "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Plaintiffs generally allege "fraud" under § 1341, ECF No. 5 at 3, but never specify any mailings or other means of committing mail or wire fraud. Plaintiffs have alleged no predicate criminal act upon which to base a RICO conspiracy. Instead, Plaintiffs repeatedly refer to "conspiracy," and "meeting of the minds" to allege their claims, but "without more, such phrases are insufficient to form the basis of a RICO claim." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 356 (8th Cir. 2011). Plaintiffs' allegations of enterprise are too broad and conclusory to support the conspiracy claim. *See id.* at 353 (stating RICO claim "requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." (citation and quotation marks omitted)).

This failure to adequately allege any mail fraud, wire fraud, or other predicate crime defeats the racketeering claim in its entirety, and it is therefore not necessary to consider any of the other requirements under the statute. *See Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1028 (8th Cir. 2008) ("Failure to present sufficient evidence on any one element of a RICO claim means the entire claim fails.").

### 3. Summary

For all the above reasons, the claims against Defendants Nieman, Rhinehart, and Gosch are dismissed.

### C. Ashley Cronbaugh

Cronbaugh was a case worker for the Children & Families of Iowa. ECF No. 5 at ¶13. Plaintiffs raise no allegations against her which occurred after July 9, 2016.

For the reasons discussed above, all § 1983 claims against Cronbaugh are barred by the statute of limitations. *See Wycoff*, 773 F.2d at 984–85 (applying two year statute of limitations to

§ 1983 claims in Iowa). Further, Plaintiffs have not met the heightened pleading standard for civil racketeering claims against any defendant. *See H & Q Props.*, 793 F.3d at 856 (recognizing heightened pleading standard of Rule 9(b) applies to RICO actions).

The claims against Defendant Cronbaugh are dismissed.

### D.    Anthony Reed

Plaintiffs allege Reed conducted field urine tests for the Department of Human Services when Christopher Bruce was subject to urine testing. ECF No. 5 ¶ 35. Reed collected a urine sample from Christopher Bruce for testing. *Id.* ¶ 36. Plaintiffs allege the testing was fraudulent and Defendants used the fraudulent tests to make it appear as if Plaintiffs were using drugs. *Id.* ¶¶ 35–39.

Plaintiffs made these same allegations against Reed in *Bruce I*, and the Court concluded the claims should be dismissed. Order 28, *Bruce I*, ECF No. 81. Plaintiffs are barred by the doctrine of collateral estoppel from bringing these same issues here. Further, for the reasons discussed above, all § 1983 claims against Reed are barred by the statute of limitations because the events giving rise to the claims occurred over two years before the instant complaint was filed. *See Wycoff*, 773 F.2d at 984d–85 (applying two year statute of limitations to § 1983 claims in Iowa). Finally, Plaintiffs have not met the heightened pleading standard for civil racketeering claims against any defendant, including Reed. *See H & Q Props.*, 793 F.3d at 856 (recognizing heightened pleading standard of Rule 9(b) applies to RICO actions).

The claims against Defendant Reed are dismissed.

### E.    Gary Bellinghausen

On January 21, 2016, Carroll Police Officer Bellinghausen approached Plaintiffs' home to arrest him Christopher Bruce. ECF No. 5 ¶ 72. Posted on the doors to the house were signs advising all law enforcement officers to produce official documentation of their identity and purpose and

be subject to $10,000 per person per day for failure to comply. *Id.* ¶ 74. Plaintiffs allege Bellinghausen did not have proper identification and, therefore, was in default of the purported contract. *Id.* at 62.

The Court addressed these issues in *Bruce I*, finding no merit to these claims. Order 23–25, *Bruce I*, ECF No. 81. Plaintiffs may not relitigate the issues here. *See Irving*, 586 F.3d at 648. Also, any § 1983 claims against Bellinghausen are barred by the statute of limitations, as the events giving rise to the claims occurred over two years before the instant complaint was filed. *See Wycoff*, 773 F.2d at 984–85 (applying two year statute of limitations to § 1983 claims in Iowa). Plaintiffs have not met the heightened pleading standard for civil racketeering claims against any defendant. *See H & Q Props.*, 793 F.3d at 856 (recognizing heightened pleading standard of Rule 9(b) applies to RICO actions).

The claims against Defendant Bellinghausen are dismissed.

### F. Police Officers Alyssa Wilson, Jake Lancaster, and Kyle Thies

Plaintiffs state that on January 25, 2016, Altoona Police Officer Wilson, at the behest of Sarcone, filed two police reports against Christopher Bruce for stalking and for threats. ECF No. 5 ¶¶ 82–83. Plaintiffs allege Wilson used her official position as an employee of the Altoona Police Department to file these reports the same day Christopher Bruce was arrested and transported to the Polk County Jail. *Id.* ¶ 97. They allege these criminal charges were part of the overall conspiracy with other defendants "to bring fabricated charges" against Christopher Bruce. *Id.* ¶ 105(a).

Plaintiffs allege Des Moines Police Officer Lancaster harassed him with telephone calls and unwanted publicity after Rhinehart, Gosch, and Nieman reported Christopher Bruce to the police. *Id.* ¶¶ 57–58. The alleged harassment occurred in January and February of 2015. *Id.*

Plaintiffs allege Lancaster was part of the conspiracy to file false charges against Christopher Bruce to keep him from attending the parental termination proceedings. *Id.* ¶ 64(a).

None of the allegations supporting claims against Wilson or Lancaster occurred after July 9, 2016. The § 1983 claims against them are therefore barred by the applicable statute of limitations. *See Wycoff*, 773 F.2d at 984–85. Further, for the reasons discussed above, Plaintiffs have not met the heightened pleading standard for civil racketeering. *See H & Q Props.*, 793 F.3d at 856 (recognizing heightened pleading standard of Rule 9(b) applies to RICO actions).

The claims against Defendants Wilson and Lancaster are dismissed.

Plaintiffs also allege Des Moines Officer Thies criminally harassed and falsely arrested Christopher Bruce. ECF No. 5 ¶¶ 110–112, 114(c). Plaintiffs allege Thies conspired with Elscott and Newbury Living to entrap Christopher Bruce to break the law. *Id.* ¶¶ 114(c), (d). Plaintiffs also allege Thies conspired with Lane against the civil rights of Plaintiffs. *Id.* ¶ 114(c).

Insofar as Plaintiffs allege the arrest by Thies and subsequent conviction violate due process or other constitutional protections, the claim is barred. Plaintiff may not bring a claim for damages under § 1983 for allegedly unconstitutional conviction or imprisonment without first showing "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Plaintiffs do not contend Christopher Bruce's conviction has been reversed or otherwise called into question. Consequently, any claim attacking his conviction may not proceed under § 1983.

Moreover, Plaintiffs have not met the heightened pleading standard for civil racketeering claims against this defendant. *See H & Q Props.*, 793 F.3d at 856 (recognizing heightened pleading standard of Rule 9(b) applies to RICO actions).

The claims against Defendant Thies are dismissed.

## G.    Private Actors

### 1.    Section 1983 Claims

Plaintiffs have named six defendants in this action who are not employed by the State of Iowa. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). For purposes of § 1983 cases, "color of state law" is analyzed the same as "state action." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

Requiring defendants to act under color of state for purposes of § 1983, excludes private conduct, even if it is discriminatory or wrongful. *Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 421 (8th Cir. 2007). "However, [i]n certain circumstances the government may become so entangled in private conduct that the deed of an ostensibly private organization or individual is to be treated . . . as if a State had caused it to be performed." *Id.* at 422 (citation and quotation marks omitted) (alteration and omission in original).

The complaint alleges Munson, Tromblay, and Pitts reported criminal activity by Christopher Bruce to the police and testified against him at trial. ECF No. 5 ¶¶ 72, 77, 82, 84, 89, 90. "The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or 1985." *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983); *see also Myers v. Morris*, 810 F.2d 1437, 1467 (8th Cir. 1987) (holding reporting conduct undertaken on own initiative as private persons reporting suspected criminal acts not conduct arising under color of state law), *abrogated on other grounds by Burns*, 500 U.S. 478.

Plaintiffs also name Newbury Living, Inc., the name of the apartment building where Christopher Bruce stayed temporarily with a friend, as a defendant. *Id.* ¶ 106. Plaintiffs allege Nancy Elscott, who also resided in the building, prompted the Newbury Living management to evict Christopher Bruce, based on previous personal interactions with Christopher Bruce. *Id.* Later, Des Moines Police Officer Thies told Christopher Bruce to move away from the building. *Id.* ¶ 110. As the staff at Newbury Living and Elscott watched him leave, Christopher Bruce "flipped them all off and stated that he would be back." *Id.* Thies arrested Christopher Bruce for disorderly conduct and two other misdemeanors. *Id.* ¶ 111.

The allegations do not assert Eslcott or anyone at Newbury Living reported Christopher Bruce to the police. It is not clear whether Officer Thies was called to the scene or was already nearby. Even if they had, however, reporting a crime is not the type of governmental entanglement that would show these defendants were acting under color of state law. *See Benavidez*, 722 F.2d at 618.

Finally, Plaintiffs allege the Des Moines Register published a story about Christopher Bruce during his April 2016 trial that was libelous. ECF No. 5 ¶¶ 96-97. They also assert the article tainted the jury against Christopher Bruce. *Id.* ¶ 97. Plaintiffs do not allege any interaction whatsoever between the Des Moines Register and any governmental official. Consequently, they have not alleged any entanglement between the newspaper or any state actor sufficient to establish an action under color of state law.

Plaintiffs' allegations fail to allege state action by any of these defendants, and the § 1983 claims against them are dismissed.

### 2. Slander, Libel, and Other State Claims

Plaintiffs allege Elscott libeled and slandered Christopher Bruce in order to have charges brought against him and gave false testimony in the criminal case. *Id.* ¶ 114(b). Plaintiffs do not

specify what statement Elscott made that was slanderous. There is no allegation of when the alleged defamatory information was conveyed or to whom it was given. This allegation is too vague to state a claim of state law slander. *See Freeman v. Bechtel Constr. Co.*, 87 F.3d 1029, 1032 (8th Cir. 1996) (finding slander allegations failed to state cognizable claim because plaintiffs "do not identify the defamatory statements with any specificity, they do not identify the manner of oral publication, and they do not allege that Bechtel (that is, a Bechtel agent acting within the scope of that agency) published the statements to a nonprivileged recipient"). Further, Elscott is immune from damages for any testimony given as a witness in a judicial proceeding. *See Burns*, 500 U.S. at 489 ("witnesses were absolutely immune at common law from subsequent damages liability for their testimony in judicial proceedings even if the witness knew the statements were false and made them with malice" (citation and quotations marks omitted)).

Similarly, the allegation of libel against the Des Moines Register is equally nonspecific because "no specific defamatory statement is alleged." *Freeman,* 87 F.3d at 1031.

Plaintiffs request punitive damages "for one to four years of mental anguish, . . . malicious prosecution, libel, slander, false imprisonment, fraud, pain and suffering; and finally, for the total and vindictive defamation of both of the claimants' characters." ECF No. 5 at 61. To the extent this allegation is attempting to raise state law claims other than defamation, the claims will be dismissed. "A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has 'dismissed all claims over which it has original jurisdiction.' The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity." *Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016) (quoting 28 U.S.C. § 1367(c)(3)) (other citation omitted). The claims described here arise from state not federal law. The Court declines to exercise supplemental jurisdiction over these state law claims where no federal claims remain.

### 3. Civil RICO

For the same reasons already discussed, Plaintiffs have not met the heightened pleading standard for civil racketeering claims against any of the private actor defendants. *See H & Q Props.*, 793 F.3d at 856 (recognizing heightened pleading standard of Rule 9(b) applies to RICO actions).

### 4. Summary

For all of the reasons discussed above, the claims against the private actor defendants are dismissed.

## H. Injunctive Relief

In addition to monetary damages, Plaintiffs also seek the following injunctive relief. ECF No. 5 at 61.

### 1. Restoration of Parental Rights

Plaintiffs ask the Court to restore Elizabeth Bruce's parental rights, or at least grant visitation with her daughter. *Id.* In so doing, Plaintiffs are asking this Court to review the state court ruling which terminated Elizabeth Bruce's parental rights, and did not recognize parental rights of Christopher Bruce.

Even when such a challenge alleges federal constitutional violations, "federal district courts . . . may not 'exercis[e] jurisdiction over general constitutional claims that are "inextricably intertwined" with specific claims already adjudicated in state court.'" *Ballinger v. Culotta*, 322 F.3d 546, 548–49 (8th Cir. 2003) (alteration in original) (quoting *Lemonds v. St. Louis Cty.*, 222 F.3d 488, 492–93 (8th Cir. 2000)). This is because "[f]ederal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court." *Id.* (alteration in original) (quoting *Lemonds*, 222 F.3d at 492);

*see also Ankenbrandt v. Richards*, 504 U.S. 689, 701–02 (1992) (child custody claims, as the subject of domestic relations, are for state courts to review); *Amerson v. Iowa*, 94 F.3d 510, 512 (8th Cir. 1996) ("Because the state courts have terminated [Amerson's] parental rights, redress for this alleged interference cannot be granted without first disturbing the state court adjudication terminating her parental rights, a matter of substantial public concern."). Except for habeas corpus review, federal courts generally do not have subject matter jurisdiction to review state court cases complaining of injuries caused by state-court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

To the extent Plaintiffs are attempting to overturn the parental termination judgment, this Court lacks jurisdiction to restore the parental rights of Elizabeth Bruce or assign parental rights to Christopher Bruce because the claim is "inextricably intertwined" with the parental rights adjudicated in state court. This request for relief is denied.

### 2. Expungement

Christopher Bruce also asks the Court "to order that [his] record be expunged of all the alleged criminal charges and crimes brought against plaintiff [Christopher Bruce] over the period of the last 3 years, including any record of arrests, charges or convictions." ECF No. 5 at 62. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). For this reason, Christopher Bruce may not seek expungement of his state criminal record in this § 1983 action.

### 3. Harassment by Sarcone

Plaintiffs ask the Court to stop Sarcone from "terrorizing" Plaintiffs by calling other law enforcement agencies to have Christopher Bruce investigated and arrested. ECF No. 5 at 62.

At most, this request for injunctive relief only seeks to keep Sarcone from acting unlawfully. "[A]n injunction which does little or nothing more than order the defendants to obey the law is not specific enough." *Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016) (quoting *Daniels v. Woodbury County*, 742 F.2d 1128, 1134 (8th Cir. 1984)). Plaintiffs' request for injunctive relief against Sarcone is denied.

### 4. Criminal Charges

Plaintiffs ask this court to recognize the criminal actions of all defendants, and Sarcone in particular. ECF No. 5 at 62. Plaintiffs allege the defendants are guilty of conspiracy against Plaintiffs' civil rights under 18 U.S.C. § 241; kidnapping under 18 U.S.C. § 1201; fraud and swindles under 18 U.S.C. § 1341; and defamation under 28 U.S.C. § 4101.[8]

Under 18 U.S.C. § 241, "[i]t is a crime for 'two or more persons [to] conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States.'" *United States v. Blakeney*, 876 F.3d 1126, 1131 (8th Cir. 2017) (quoting 18 U.S.C. § 241) (alteration and omission in original). It is also a federal crime to unlawfully abduct any person without consent. 18 U.S.C. § 1201(a). Federal law also prohibits the use of the mails to defraud another. 18 U.S.C. § 1341.

Private citizens lack standing to seek criminal charges against an individual for violations of federal criminal statutes. *Parkhurst v. Tabor*, 569 F.3d 861, 867 (8th Cir. 2009) (holding decision to prosecute and what charge to file "are decisions that generally rest in the prosecutor's discretion"); *see also United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch

---

[8] Plaintiffs also allege jurisdiction under 8 U.S.C. § 1234c, ECF No. 5 at 3. Title 8 of the United States Code sets out the laws related to Aliens and Nationality. There is no provision § 1234c. Even if there were such a code section, this chapter provides no relief to Plaintiffs.

has exclusive authority and absolute discretion to decide whether to prosecute a case."). For this reason, any claim for criminal charges against any defendant is without basis and is dismissed.

With respect to 28 U.S.C. § 4101, the claim is also inapplicable. In general, the substantive statue prohibits a domestic court of the United States from recognizing or enforcing a foreign judgment for defamation unless certain conditions are met. 28 U.S.C. § 4102. Section 4101 of that title defines defamation. As Plaintiffs are not seeking to enforce a foreign judgment for defamation, the statute is inapplicable here.

## V.    CONCLUSION

Plaintiff Christopher Bruce's motion for leave to proceed in forma pauperis, ECF No. 2, is **granted**. Plaintiff Elizabeth Bruce's motion for leave to proceed in forma pauperis, ECF No. 3, is **granted**.

For all the reasons discussed above, this case is **dismissed**. Cost are taxed to Plaintiffs Christopher Bruce and Elizabeth Bruce.

**IT IS SO ORDERED.**

Dated this 21st day of September, 2018.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE